UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DURWIN ABBOTT (DOC# 316843)**                               CIVIL ACTION

**VERSUS**

**CAPTAIN PERCY BABIN, ET AL.**                  NO.:15-00505-BAJ-EWD

<u>**RULING AND ORDER**</u>

Before the Court is a **Motion for Summary Judgment (Doc. 23)**, filed by Master Sergeant Tyrone Kilbourne ("MSgt. Kilbourne") and Captain Percy Babin ("Capt. Babin") (collectively, "Defendants"), seeking summary judgment on Durwin Abbott's ("Plaintiff") 42 U.S.C. § 1983 ("§ 1983") claims. Plaintiff filed an opposition, (Doc. 25), and both parties submitted supplemental briefs, (Docs. 28-1, 34). Oral argument is not necessary.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.   BACKGROUND**

Plaintiff was an inmate at Dixon Correctional Institute ("DCI") in Jackson, Louisiana from August 2005 to March 2013. (Doc. 23-5 at p. 8). Plaintiff alleges that on November 11, 2011, Defendants used excessive force in retaliation for the internal grievances he previously submitted against Capt. Babin. (Doc. 1 at pp. 3–5). Plaintiff alleges that Capt. Babin directed his subordinates to conduct a "shake down" and to escort him to the "bull pen." (*Id*. at p. 3). Plaintiff claims that, once in the "bull pen," Capt. Babin handcuffed him and repeatedly punched him, and MSgt. Kilbourne placed him in a chokehold. (*Id*. at pp. 4–5). According to Plaintiff, he suffered injuries to his face, neck, arm, shoulder and wrists. (*Id*. at p. 5).

On October 5, 2012, Plaintiff filed an excessive force claim pursuant to § 1983 in Civil Action No. 12-631. *Abbott v. Babin*, No. 12-631, Doc. 1 (M.D. La. filed Oct. 5, 2012). This Court granted Defendants' motion for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. *Abbott v. Babin*, No. 12-631, 2014 WL 412411 (M.D. La. Feb. 3, 2014). The United States Court of Appeals for the Fifth Circuit affirmed the dismissal, but without prejudice to Plaintiff refiling after he exhausted administrative remedies. *Abbott v. Babin*, 587 F. App'x 116, 119 (5th Cir. 2014) (unpublished).

On July 31, 2015, Plaintiff filed the subject Complaint alleging § 1983 claims of excessive force and retaliation, and in the alternative, state law negligence. (Doc. 1). In the instant motion, Defendants move for summary judgment on the grounds of prescription, failure to exhaust administrative remedies, and qualified immunity. (Doc. 23).

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure ("Rules"), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the nonmovant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION[1]

### A.   PRESCRIPTION

Defendants assert that Plaintiff's § 1983 claim is barred by prescription because Plaintiff filed this action over a year after the incident occurred. (Doc. 23-2

---

[1] Plaintiff objects to the Court's consideration of certain evidence submitted by Defendants. *See* Doc. 25 at pp. 4–6; Doc. 34 at pp. 2–3. However, the objections raised by Plaintiff are immaterial because they pertain to statements or evidence upon which the Court does not rely in this ruling. *See Gonzalez v. Aztex Advantage*, 547 F. App'x 424 (5th Cir. 2013).

3

at p. 14). Section 1983 does not have a federal statute of limitations, however, federal courts use the forum state's personal injury limitations period. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). In Louisiana, a one year prescriptive period applies to § 1983 actions, which commences the day injury is sustained. La. Civ. Code. art. 3492; *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988). However, § 1983 actions are tolled during the pendency of a prisoner's administrative proceedings, *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001), as well as related federal court proceedings, *Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987).

Here, the Fifth Circuit noted in Plaintiff's appeal that the prescriptive period was tolled during the pendency of his prior action and any additional state administrative proceedings. *Abbott*, 587 F. App'x at 119. The Fifth Circuit also tolled the prescriptive period an additional thirty days to permit Plaintiff an opportunity to submit a new grievance. *Id*. Thus, during the duration of his prior administrative proceedings and court proceedings, the prescriptive period was tolled for two years, six months, and ten days.[2]

On or about October 23, 2014, Plaintiff timely submitted the grievance that is the subject of this action. (Doc. 31 at p. 6). Filing the grievance initiated a new administrative proceeding that tolled the prescriptive period for an additional six

---

[2] The prescriptive period began November 11, 2011, and was tolled from on or about December 20, 2011, the date his first grievance was received, to June 11, 2012, the date his grievance concluded. Doc. 23-5 at p. 24. When Plaintiff filed his federal court complaint on October 5, 2012, the prescriptive period was tolled through September 29, 2014, the date the Fifth Circuit issued its decision on Plaintiff's appeal, *see Abbott*, 587 F. App'x 116, until October 23, 2014, the date Plaintiff submitted a new grievance, Doc. 31 at p. 6.

4

months and twenty-five days.[3] Therefore, *in toto*, the one-year prescription period was tolled three years, one month and five days, and ran for two-hundred and thirty days. Accordingly, Plaintiff's § 1983 claims are not time-barred.

### B.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The PLRA prohibits actions under § 1983 by inmates until "such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a). The purpose of the exhaustion requirement is to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to encourage the efficient resolution of claims. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing suit in federal court. La. Admin. Code, Title 22, pt. I, § 325 (2013). An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden. *Id*. at § 325(G)(1)(a)(i). An ARP screening officer screens the inmate's request and either accepts the request into the first-step or rejects it for one of ten enumerated reasons. *Id*. at § 325(I)(1)(a)(i)–(ii). Once the request is accepted, the warden must respond on a first-step response form within forty (40) days of receipt of the request. *Id*. at § 325(J)(1)(a)(ii). If the inmate is not satisfied with the response,

---

[3] As discussed *infra* p. 6, the grievance submitted on or about October 23, 2014, went through two separate administrative proceedings. Therefore, although the grievance originally concluded on March 27, 2015, Doc. 23-5 at p. 25, the second administrative proceeding began on June 10, 2015, and Plaintiff's request to appeal to the second-step was pending when Plaintiff filed the instant action on July 31, 2015, *see* Doc. 25-2 at p. 3.

5

he may proceed to the second-step of the ARP process by appealing to the Secretary of the Department of Corrections ("DOC Secretary") using a space provided on the first-step response form. *Id.* at § 325(J)(1)(b)(i)–(ii). The DOC Secretary is required to issue a response within forty-five (45) days from the date the request is received utilizing a second-step response form. *Id.* at § 325(J)(1)(b)(ii). The expiration of any response time limits entitle the inmate to move to the next step in the process. *Id.* at § 325(J)(1)(c).

Following the Fifth Circuit's decision on September 29, 2014, Plaintiff submitted a new grievance on October 21, 2014, which was received by the warden on October 23, 2014. (Doc. 31 at p. 6). The grievance was assigned ARP# DCI-2015-282 (hereinafter, "ARP# 282"), and complained of the incident on November 11, 2011. (Doc. 23-5 at p. 3). On March 27, 2015, 155 days later, the grievance was rejected for containing "multiple issues – harassment – use of physical force – threats of abuse – conflict w/ staff – verbal abuse – appeal decision – rules/posted policies not filed – retaliation for filing ARP."[4] (Doc. 23-5 at p. 25).

On June 10, 2015, the grievance associated with ARP# 282 was reconsidered under ARP# DCI-2015-430 (hereinafter, "ARP# 430").[5] (Doc. 28-1 at p. 2; Doc. 34 at

---

[4] It is unclear whether Plaintiff received the rejection. The Court ordered, *inter alia*, that Defendants supplement the record with proof of receipt, and Defendants failed to do so. *See* Doc. 27.

[5] Defendants' defense of failure to exhaust administrative remedies originally relied solely upon ARP# 430. *See generally* Doc. 23-2. After the Court ordered the parties to supplement the record for ARP# 430 to provide documentation of the date ARP# 430 was initially received, Defendants filed a motion for leave of court to supplement the record with ARP# 282. Doc. 28. Defendants now represent that there was "mixed up [sic]" and "confusion," and that it "in essence answered the same ARP's [sic] twice with different ARP numbers." Doc. 28-1 at p. 2. Plaintiff, on the other hand, contends he submitted ARP# 282 in October 2014 and ARP# 430 in June 2015, asserting the same grievance. Doc. 34 at pp. 7–8.

pp. 7–8). ARP# 430 was also rejected for containing "multiple issues" and for being submitted "beyond the 90 day time limit for filing." (Doc. 23-5 at p. 23). The reason provided for the rejection was that Plaintiff requested the reconsideration of his grievance associated with the 2012 litigation and failed to correct the deficiencies that resulted in the original rejection. (*Id.*). Utilizing the space provided on the first-step response form, Plaintiff filed an appeal of the rejection to the second-step on or about June 18, 2015, and 194 days later, the appeal was received on December 29, 2015. (Doc. 25-2 at p. 3).[6]

Because the ARPs were screened and rejected, Defendants argue that Plaintiff failed to exhaust administrative remedies. (Doc. 23-2 at pp. 12–13). Conversely, Plaintiff asserts that he exhausted all available administrative remedies, (Doc. 25 at p. 1), and the Court agrees. The facts of this action demonstrate a grievance process that was riddled with errors and unnecessary hurdles that created—for all practical purposes—a dead end. As a result, administrative remedies were *not available* to Plaintiff.

The exhaustion requirement of the PLRA hinges on the availability of administrative remedies. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016). Although a grievance procedure may be officially on the books, such remedies can be deemed not available if in practice it prevents an inmate from seeking redress. *Id*. As the United States Supreme Court noted in *Ross*, "an inmate is required to exhaust

---

[6] It is perplexing that it took 194 days, or over six months, for the appeal to travel within the state of Louisiana to the DOC Secretary. The delay is further exasperated by the fact that the forty-five (45) day time limit for the DOC Secretary to adjudicate the appeal began after it was received. As a result, Plaintiff was without any recourse during the 194 days because he was not entitled to proceed to the next step until the DOC Secretary issued a response or the forty-five (45) day time limit expired.

7

those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court recognized that a grievance procedure is unavailable when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*; *see also Curry, Jr. v. Mississippi Dep't of Corr.*, 586 F. App'x 165, 166 (5th Cir. 2014) ("We have excused the exhaustion requirement if prison officials have ignored or interfered with an inmate's pursuit of his administrative remedies." (citing *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982))). Of particular concern in this action are the excessive delays and the erroneous rejections of Plaintiff's ARPs.

The ARP process provides explicit time limits for rendering a decision on a pending grievance. La. Admin. Code, Title 22, pt. I, § 325(J)(1)(a)–(b) (providing forty (40) days at the first-step and forty-five (45) days at the second-step). Here, 153 days elapsed between the initial filing and ultimate rejection of ARP# 282, several months past the forty (40) day period for the warden to adjudicate the ARP. Despite the evident delay, DCI's internal records misleadingly represent that ARP# 282 was initiated and rejected on the same date: March 27, 2015.[7] (*See* Doc. 23-5 at p. 25). Likewise, under ARP# 430, 194 days elapsed between Plaintiff's request to appeal to the second-step on June 18, 2015, and its receipt on December 29, 2015. (Doc. 25-2 at p. 3). The forty-five (45) day time limit, however, does not begin until the request is *received*. La. Admin. Code, Title 22, pt. I, § 325 (J)(1)(a)(ii). Therefore, even if Plaintiff

---

[7] The Court will decline to opine on how utterly unreasonable it was for DCI to decline a grievance on the same date it was filed. If such was, in fact, the case, it renders the grievance process and time limits absurdly meaningless.

8

waited for the expiration of the forty-five (45) day time limit to file in federal court, he would not have been entitled to do so until February 12, 2016.

Additionally, the rejection of the ARPs for containing "multiple issues" was not supported by the ARP process codified in the Louisiana Administrative Code. First, "multiple issues" is not an authorized rejection. *See* La. Admin. Code, Title 22, pt. I, § 325(I)(1)(a)(ii)(a)–(j). The ARP process does not prohibit inmates from addressing multiple theories of recovery arising from one incident. Rather, grievances may be rejected when inmates "request a remedy for more than one *incident* (a multiple complaint)." *Id*. at § 325(I)(1)(ii)(g) (emphasis added). By definition, an incident is a "discrete occurrence or happening; an event." *Incident*, Black's Law Dictionary (10th ed. 2014).

The prison's rejection of Plaintiff's ARPs for "multiple issues" represents a failure to recognize the distinct difference between an incident and an issue. It is not uncommon for one incident to give rise to multiple issues. Yet, the prison requires inmates to submit separate ARPs for each issue, which entails legally untrained and uncounseled inmates identifying and segregating distinct legal issues arising out of a single incident. This is a daunting task that has challenged the brightest of law students for generations. The ARP process, however, is not a law school exam; but a grievance system that should not require legal training to effectively navigate. Here, Plaintiff's ARPs addressed one incident[8] but raised multiple theories of recovery.

---

[8] The crux of Plaintiff's ARP is the event that occurred on November 11, 2011. Admittedly, Plaintiff made tangential references to subsequent occurrences. Plaintiff referenced a visit on November 17, 2011, by Colonel Turner who asked him to "make a deal" to "cover up" the incident on November 11, 2011. *See* Doc. 28-2 at p. 4. Plaintiff also referenced the denial of prior ARPs on November 18, 2011,

9

(Doc. 31 at pp. 2–5). He was not required to submit separate ARPs for each issue and his ARPs should not have been rejected for containing "multiple issues."

Moreover, ARP# 430 was rejected for a reason now controverted by Defendants. Although the ARP rejection unambiguously stated that it was rejected because Plaintiff requested the reconsideration of his 2012 grievance, Defendants now admit that the grievance associated with ARP# 430 was not a separate 2012 grievance but the same grievance submitted under ARP# 282. (Doc. 28-1 at p. 2). Despite the error, Defendants provide no reasonable explanation for the shockingly inept manner in which ARP# 430 was adjudicated, but blame Plaintiff for filing "so many ARP's [sic] about similar issues." (Doc. 28-1 at p. 2). This is another example of the degree of administrative incompetence that plagued Plaintiff's good faith attempt at exhaustion.

In sum, the proffered reasons for the rejections were misleading and disingenuous. And when the rejections are coupled with the excessive time delays, it is clear that the ARP process was an unnavigable quagmire that made it impossible for Plaintiff to effectively exhaust his grievances. Accordingly, the exhaustion requirement is satisfied with respect to Plaintiff's § 1983 claims of excessive force and retaliation.

---

which he contends is evidence of an attempt to "cover up" Capt. Babin's improper conduct. *Id*. While each of these occurrences happened days after the incident, it is apparent that Plaintiff was using them as circumstantial support because he believed they emanated from the incident on November 11, 2011.

### C. QUALIFIED IMMUNITY

Defendants summarily assert that they are entitled to qualified immunity. (Doc. 23-2 at p. 5). In addition to this conclusory assertion, Defendants only provide a standard discussion of the doctrine of qualified immunity. (*Id.* at pp. 5–6). Absent, however, is a factual analysis supporting qualified immunity and the submission of supporting documentation. Because Rule 56(a) requires a party to *show* that it is entitled to judgment as a matter of law, the Court finds that Defendants failed to properly raise a qualified immunity defense for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact.").

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' **Motion for Summary Judgment (Doc. 23)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Extension of Time to Respond to Summary Judgment (Doc. 24) is DENIED AS MOOT.**[9]

Baton Rouge, Louisiana, this 21ST day of July, 2016.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[9] Plaintiff timely filed his opposition on January 4, 2015.