```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF LOUISIANA

DURWIN ABBOTT                    *      CIVIL ACTION NO: 15-505
                                 *
v.                               *
                                 *      JUDGE BRIAN A. JACKSON
CAPTAIN PERCY BABIN;             *
MSGT TYRONE KILBOURNE; and       *      MAGISTRATE JUDGE
WARDEN STEVE RADAR               *      STEPHEN C. RIEDLINGER
*********************************************************************************
```

## PRE-TRIAL BRIEF

On November 11, 2011, Mr. Durwin Abbott, a DOC inmate housed at DCI, was woken by Sergeant Rogers and Lt. Cutrere for another shake down. Captain Babin, who had ordered the shake down, was using shake downs as a form of harassment. Captain Babin had made repeated menacing verbal threats that he would get to Durwin Abbott for having filed prior ARP complaints. Lt. Cutrere and Sergeant Rogers, said they were ordered to have Mr. Abbott place all of his food in a box and get all of his receipts and go to the bull pen.

Captain Babin soon appeared and confronted Mr. Abbott with verbal threats and directed him to "Go catch the bull pen before I F-over you in here." There was no cause to remove Mr. Abbott from to the bull pen unless except that there are no cameras or video in the bull pen. After reaching the bull pen, Captain Babin appeared in the bullpen and made further verbal threats. Captain Babin directed Sergeant Sanders to close the walk. Captain Babin directed Mr. Abbott to turn around and he placed cuffs very tightly on Mr. Abbott and Captain Babin placed his hand on Mr. Abbott. A verbal exchange ensued after which Captain Babin directed Mr. Abbott that if he said another work, Captain Babin would take him to the Major's office and beat him. Mr. Abbott was cuffed behind his back when Captain Babin first punched him in the face. Sergeant Kilbourne then placed his hand around Mr. Abbott's neck and put a choke hold on him. Abbott was yelling for help and exclaiming that he had a bullet in his neck. Msgt Taylor an Sgt Sander and Msgt Banford failed to intervene. Babin punches Mr. Abbott over and over while Mr. Abbott's hands were cuffed behind his back. The last punch knocked Mr. Abbott off of his feet and caused

serious damage to his shoulder, which he believes was torn.

While being escorted from the bull pen further action was taken by Babin and Kilbourne to bend Mr. Abbott's arms back so far that his shoulder was torn. Babin punched the Plaintiff repeatedly in the face. The last punch came while they were entering the back door of the cell block were Babin punched Mr. Abbott so hard he was knocked off of his feet.  Initially, medical was denied.

Mr. Abbott suffered nerve damage to his wrist from the tightness of the hand cuffs; serious medical injury to his shoulder and other injuries to his face and neck and arm.

On November 17, 2011, Colonel Turner came to see Mr. Abbott and asked how they could fix the situation and he wanted a deal.  Plaintiff has repeatedly requested a transfer to another penal institution to get away from the Defendants.  Warden Radar refused to assist with a transfer and refused to take appropriate action against Captain Babin to stop the harassment.

Warden Radar is well aware that Captain Babin has a history of repeated brutality and harassment of inmates and use of unnecessary and excessive force, but he has done little to protect the constitutional rights of the Plaintiff.  In the alternative, these guards have similarly attacked other inmates.

On August 8, 2011, Captain Percy Babin removed Christopher Mitchell, DOC 524616, from his dorm to the bull pen and to the office of the Major and beat him excessively and without cause, which was reported to Warden Radar.

On September 2, 2011, Captain Percy Babin removed Marcus Hill, DOC 310825, from the yard to the bull pen and to the office of the Major and choked and beat him excessively and without cause, which was reported to Warden Radar.

On September 2, 2011, two hours before the Marcus Hill incident, Captain Percy Babin harassed and assaulted Plaintiff, Mr. Abbott, who filed an ARP which started further harassment by Captain Babin against the Plaintiff ARP DCI 2011-675 and DCI

2011-0834.

On November 22, 2011, Captain Percy Babin removed Clevern Granger, DOC 587600, from his dorm to the bull pen and to the office of the Major and beat him excessively and without cause, which was reported to Warden Radar.

On December 9, 2011, Captain Percy Babin removed Darren Robinson, DOC 158443, from his dorm to the bull pen and to the office of the Major and beat him excessively and without cause, which was reported to Warden Radar.

Captain Percy Babin punched Dennis Pierce, DOC 581033, in the chest and cursed him a while he was being processed the cell block Another inmate was beat so bad he had to be taken to EKL and he was in C-block.

This is a pattern of deliberate indifference that shows both intent and motive.

**I.    Both have been found guilty of beating another inmate**.

Numerous inmates have complained about the abusive nature of both Percy Babin and Tyrone Kilbourne. Both Percy Babin and Tyrone Kilbourne were found guilty by a jury of violating the rights of Marcus Hill.

To be relevant, evidence of other bad acts "in a lawsuit alleging excessive force by law enforcement officers must typically have at least some bearing on how an officer has treated other detainees while carrying out his duties . . . ." <u>Ellis v. Packnett</u>, No. 06-33, 2007 WL 2688540, at *11 (S.D. Miss. Sept. 10, 2007).

Here, the evidence that is sought to be offered is clearly of some value that of the Defendants' character. The evidence that is to be introduced evidences the Defendants had intentions of callous disregards toward inmates in the facility in which they worked. Further the evidence does not cause undue prejudice. The evidence would outweigh the probative value that the evidence would bring to the trial of this matter. The state of mind of the Defendants is malicious and sadistic and  relevant to show deliberate indifference

3

and this is not an isolated event, but a pattern of conduct.  In Brown v. Callahan[1] the Fifth Circuit wrote:

> Deliberate indifference is a stringent standard of fault, requiring proof that [an official] disregarded a known or obvious consequence of his action. Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference. Deliberate indifference is more than mere negligence or even gross negligence. Proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation.

With regard to the punitive damage award, the Fifth Circuit reviewed the factors of BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), and wrote,[2] as follows:

> The first Gore factor--the degree of reprehensibility of the defendant's conduct--is "the most important indicium of the reasonableness of a punitive damages award."[3] To determine the degree to which conduct is reprehensible, the Supreme Court has instructed us to consider whether (1) the harm was physical or merely economic, (2) the conduct evinced a reckless disregard of the health or safety of others, (3) the target was vulnerable, **(4) the conduct involved repeated actions or was an isolated incident**, and (5) the harm was the result of intentional malice, trickery, or deceit.[4]

Thus, whether the actions of these guards was an isolated event or part of a pattern and practice of conduct is relevant to both a finding of sadistic conduct and for a finding of punitive damages.  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[5]

---

[1]  Brown v. Callahan, 623 F.3d 249, 255 (5th Cir. 2010) (citations and quotation marks omitted), cert. denied, 131 S. Ct. 2932, 180 L. Ed. 2d 225 (2011).

[2]  Gore, 535 Fed. Appx. at 432.

[3]  Citing, Gore, 517 U.S. at 575.

[4]  Citing, State Farm, 538 U.S. at 417-29.

[5]  Porter v. Epps, 659 F.3d 440, 449; 2011 U.S. App. LEXIS 19756 (5th Cir. 2011) citing and quoting, Connick v. Thompson, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal quotation marks omitted, alteration in original) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

Here, the witnesses sought to be stricken will testify as to a pattern and practice of conduct. The testimony is relevant and probative.

Cases are not being retried. Inmates who have first hand personal knowledge of the intent to harm, the sadistic mind set, and malicious actions of the these Defendants is relevant. A jury should not be under the impression that Durwin Abbott is the only inmate who has claimed to have been abused by these two guards. That is a false impression and that will affect the jury. The truth should be told. The jury should not be under the impression that the beating of Durwin Abbott was a one time isolated event. That is false. The truth should be told to the jury. If it is prejudicial, it is relevant.

Here, the need for the truth outweighs the need for a lie or false impression.

**II.    Retaliation**

In Smith v. Hebert, 533 Fed. Appx. 479, 481, 2013 U.S. App. LEXIS 13307, *3-4, 2013 WL 3243535 (5th Cir. La. 2013), the Fifth Circuit wrote, "'To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.`[6] `The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'"[7]

Here, the retaliation for filing ARPs, which are required to be exhausted prior to filing any action including those arising from violations of constitutional rights. Inmates have a first amendment and due process right to file an ARP. Where an inmate is punished for filing an ARP that punishment where it takes the form of physical abuse, as in this case, constitutes corporal punishment prohibited by the Eighth Amendments prohibition on cruel

---

[6] Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (internal quotation marks and citation omitted).

[7] Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation marks and citation omitted).

and unusual punishment. Guards are to be dissuaded from punishing inmates for filing ARPs to protect their rights.

III.  **The focus of the trial should be on the actions taken by Babin and Kilbourne and not the extent of injury to Abbott**

The United States Constitution imposes limits on the power of prison officials to use corporal punishment to discipline inmates. Prison officials are prohibited from inflicting pain on inmates that is unnecessary, excessive or as corporal punishment. You may have heard or you may hear terms during this trial such as excessive force, unnecessary force, or that force was used as a punishment. Unnecessary force is force that cannot reasonably be justified by the facts of the situation. Excessive force that is beyond that which is reasonable and apparently necessary to control a situation where some force is needed. Corporal punishment is the inflicting of physical pain on an inmate for punishment.[8]

In considering the second element—harm—not every malevolent, harmful, or injurious touch by a prison guard gives rise to a claim under federal law. But an inmate like plaintiff need not show significant injury to establish a constitutional violation. Even a slight use of force, under certain circumstances, may be so repugnant to the conscience of mankind that a claim may exist. The extent of injury an inmate suffers is one factor that may suggest whether the use of the force could reasonably have been thought necessary in the particular situation.

This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. Not every malevolent touch by a prison guard gives rise to a federal cause of action. Every malevolent touch by a prison guard gives rise to a federal cause of action.

---

[8] Corrections Services Employee Manual, at 34.

The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. The absence of serious injury is not irrelevant to the Eighth Amendment inquiry.[9]

Respectfully submitted:

s/Donna Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run Drive, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
Dgrodner@grodnerlaw.com

**Attorney for Plaintiff, Durwin Abbott**

CERTIFICATE

I hereby certify that on October 24, 2016, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel named below by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to the parties marked non-CM/ECF participants:

s/Donna Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run Drive, B-1

---

[9] Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175 (2010).

Baton Rouge, Louisiana 70808
(225) 769-1919
FAX (225) 769-1997
Email: dgrodner@grodnerlaw.com